Estate of Kammerer: Geb (Eleanor), Respondent, v.
Geb (Richard), Appellant.

*November 3—December 1, 1959.*

For the appellant there was a brief and oral argument by *Milton S. Padway* of Milwaukee.

For the respondent there was a brief and oral argument by *Harry A. Kovenock* and *Ben G. Slater,* both of Milwaukee.

CURRIE, J. The deceased, William F. Kammerer, a resident of Milwaukee county, died testate on November 30, 1954, and his estate was administered in the county court of that county. The final decree making final distribution was entered November 29, 1956. Because the residuary legatee predeceased the testator without issue surviving, the

residue of the estate was ordered distributed by such final decree to the heirs of testator consisting of 13 first cousins, one of whom was Harold Geb, also known as Harold Jacob Geb, father of Richard A. Geb. The whereabouts of Harold Geb was then unknown, and such final decree further provided that his share should be deposited with the state treasurer pursuant to sec. 318.06 (8) (b), Stats. The amount of such share after payment of inheritance taxes amounted to $3,205.07.

On October 3, 1947, the petitioner Eleanor Geb had been divorced from Harold Geb by a judgment entered in the circuit court for Milwaukee county. Such judgment required him to pay alimony of $27 per month. While in arrears in payment of such alimony, Harold Geb disappeared from Milwaukee some time in July, 1950. On July 24, 1957, his son, the appellant Richard A. Geb, upon his own petition, and without the giving of notice, was appointed administrator of Harold Geb's estate. The petition requesting such appointment was grounded upon the fact that Harold had been absent from Milwaukee and unheard of for seven years, and, therefore, was presumed dead. Richard, on August 7, 1957, petitioned the county court for an order directing the state treasurer to pay the $3,205.07 deposit over to Richard as administrator of his father's estate. The county court set such latter petition for hearing on August 29, 1957, and required notice of the same to be given to the attorney general, which was done. At the hearing had on August 29, 1957, an order was entered directing the state treasurer to pay such sum to Richard, as administrator of the Harold Geb estate. Pursuant to such order the state treasurer paid such sum to Richard on or about September 19, 1957. It is such order of August 29, 1957, that Eleanor now seeks by her instant petition to have the county court vacate.

In the meantime, on June 13, 1957, Eleanor had petitioned the circuit court for Milwaukee county for an order requiring Harold to show cause why an order should not be entered in the prior divorce action fixing the amount of arrearages of alimony and awarding her a lien on the $3,205.07 deposited with the state treasurer. Such order to show cause was entered by the circuit court. Because Harold's whereabouts was still unknown to Eleanor, the only notice given Harold of such proceeding was by publication. The order to show cause was returnable on August 2, 1957. At such time Richard, as administrator of Harold's estate, entered a special appearance and objected to the jurisdiction of the circuit court on the ground that Harold was dead. Counsel for Eleanor countered with the argument that there was no presumption of death arising by reason of the seven years' unknown whereabouts of Harold under the particular circumstances under which he had disappeared from Milwaukee. The circuit court requested briefs and took the matter under advisement. Up until the time the circuit court entered its subsequent order of November 1, 1957, the court had reached no determination in the matter.

On or about October 30, 1957, Eleanor received positive information that Harold was alive and residing at a certain address in the city of San Francisco, California. Eleanor then filed a supplemental petition with the circuit court pursuant to which a further order dated November 1, 1957, was issued requiring Harold to show cause why her petition of June 13, 1957, should not be granted. Such order to show cause was served personally upon Harold in San Francisco and contained a temporary restraining order enjoining Harold from withdrawing, or attempting to withdraw, the $3,205.07 previously deposited with the state treasurer.

Thereafter on November 21, 1957, Mr. Kovenoch, counsel for Eleanor, presented to the county court a petition verified

by him in the matter of the estate of Harold Geb. This set forth many of the pertinent facts hereinbefore stated, and prayed that an order be issued restraining Richard from disposing of or transferring any part of the $3,205.07 received by him as administrator of his father's estate from the state treasurer. The county court on the same day by order to show cause set the petition for hearing on November 26, 1957, which order to show cause restrained Richard from in any manner transferring or disposing of the $3,205.07 received from the state treasurer. Upon the hearing of such order to show cause the court determined that it had jurisdiction and ordered Richard to appear before the court on December 2, 1957, for further proceedings.

Richard then petitioned the supreme court for a writ of prohibition directing the county court of Milwaukee county and Hon. Roy R. Stauff, judge of such court, to refrain and desist from any further proceeding in the Harold Geb estate on the ground that the county court had no further jurisdiction in the matter. The supreme court thereupon on November 29, 1957, issued an order requiring the county court of Milwaukee county and Judge Stauff to show cause why such writ should not be issued, which order to show cause temporarily restrained such court and judge from proceeding further in such matter. Such order to show cause came on for hearing on December 6, 1957, at which time the supreme court was informed of most, if not all, of the facts hereinbefore set forth, many of which were contained in the written return filed by the corporation counsel of Milwaukee county in behalf of the county court and Judge Stauff.

After hearing arguments of counsel, and considering the briefs filed, the supreme court on January 14, 1958, issued a writ of prohibition which directed the county court of

Milwaukee county and Judge STAUFF to refrain from any further proceedings in the matter of the estate of Harold Geb. While the supreme court filed no opinion in the matter, we will state now that we deemed that the controlling principle of law was set forth in *Beckwith v. Bates* (1924), 228 Mich. 400, 200 N. W. 151. Such principle is that, if the person presumed dead whose estate is being administered turns up alive, the estate proceedings are void *ab initio* for want of subject matter.

In the meantime the circuit court of Milwaukee county had held a hearing upon its order to show cause of November 1, 1957, and on December 11, 1957, such court entered a money judgment dated November 29, 1957, against Harold for the arrearages in alimony in the sum of $3,203.25. Such judgment also contained the following provision:

"That the plaintiff is entitled to a lien in the amount of $3,203.25 upon that fund, which on June 14, 1957, was in the possession of the state treasurer under his receipt No. 27374, and subject to payment upon order of the county court of Milwaukee county in the estate of William F. Kammerer, deceased; and that as between the plaintiff, Eleanor Geb, on the one hand, and the defendant, Harold Jacob Geb, and any person claiming in the right of the defendant otherwise than as a purchaser for value without notice of the plaintiff's claim, on the other hand, the plaintiff is entitled to have said lien satisfied out of the said fund in the control of said county court; and for that purpose the plaintiff is entitled to apply to the county court of Milwaukee county to have said fund, in the possession of said court or its depository or officer, paid to the plaintiff; and to the extent of such payment to the plaintiff, any right in or claim thereto on the part of the defendant, Harold Jacob Geb, shall be deemed satisfied, paid, and discharged."

On November 20, 1957, Harold executed two receipts which were acknowledged on that date before a notary pub-

lic at San Francisco, and both were subsequently filed with the county court of Milwaukee county in the estate of William F. Kammerer, deceased. One receipt released the state of Wisconsin from any claim Harold had against the prior deposit which had been made with the state treasurer covering his inheritance from such estate. The other receipt acknowledged receipt by Harold of the $3,205.07 in full payment of his distributive share from such estate, and released the administrator and his surety from any and all liability to Harold. At the hearing held before the supreme court on December 6, 1957, this court was advised by counsel for Richard that a receipt had been obtained from Harold for the $3,205.07.

The theory, under which Eleanor by her instant petition seeks to sustain the jurisdiction of the county court to vacate its order of August 29, 1957, and require Richard either to redeposit the $3,205.07 with the state treasurer or deposit the same with the register in probate, is that such order was obtained by fraud. The fraud charged is that Richard, when he had himself appointed administrator of his father's estate and secured such order of August 29, 1957, knew that his father was alive, and concealed such fact from the county court. Richard denies that he then knew his father was alive. However, the only issue before us now is that of the jurisdiction of the county court to act upon Eleanor's instant petition. Therefore, for the purposes of this appeal we must assume that the allegations of such petition are true, except as they may be contradicted by documents in the record in the instant matter and in the prior prohibition proceeding in this court. If the county court has jurisdiction to proceed further in the matter, then of course the issue of when Richard first learned that his father was still alive will have

to be determined by the county court, and Richard will be afforded an opportunity to present his evidence as to such issue.

Probate courts have full equity jurisdiction to vacate orders and judgments made and rendered in the administration of estates when they were induced by fraud, even though the time for appeal has expired. *Will of Pettee* (1954), 266 Wis. 347, 352, 63 N. W. (2d) 715. Therefore, the county court in the instant case has jurisdiction to vacate its order of August 29, 1957, which directed the state treasurer to pay the $3,205.07 over to Richard.

The more-troublesome question is whether the county court has jurisdiction to go beyond that and now compel Richard to account to the court for the $3,205.07, which he had already previously accounted for under date of November 20, 1957, to Harold Geb, the rightful heir to whom the final decree had assigned such sum. A further complicating factor is that the person who now seeks to benefit from such accounting had no standing in the Kammerer estate to oppose the entering of the order of August 29, 1957, even if she had been notified of the pendency of the petition pursuant to which such order was entered. This is because a creditor of an heir or legatee can only obtain such standing by pursuing the procedure authorized by sec. 318.08, Stats. This Eleanor did not do prior to the time that Richard had already accounted to Harold for the $3,205.07.

There would have been no fraud perpetrated by Richard against Eleanor, upon which to ground the county court's assuming jurisdiction to now compel Richard to account for the $3,205.07 for the benefit of Eleanor, but for Richard's acts in the circuit court proceeding. This is because, until Eleanor had some standing as a party in interest in the

Kammerer estate, Harold had a right to collect his inheritance, and Richard was in effect merely the conduit through which such collection was consummated. However, Richard's acts in the circuit court proceeding delayed Eleanor in obtaining a judgment granting her a lien on Harold's inheritance which she could then enforce in the Kammerer estate. But for such delay there is every probability Eleanor would have secured such lien and, armed with the same, have successfully proceeded to enforce the same in the Kammerer estate before any order would have been had directing the state treasurer to pay over Harold's inheritance to either Richard or Harold. Thus the reason why Eleanor had no standing to object to entering the order of August 29, 1957, at the time it was entered, was due to Richard's delay of the circuit court proceeding. If it develops on the hearing on the merits that Richard, at the time he entered his special appearance in circuit court, and objected to the jurisdiction of that court, knew that Harold was alive, then Richard's conduct was fraudulent with respect to Eleanor.

The relief sought by Eleanor's instant petition is equitable in nature. It is one of the maxims of equity that equity regards as done that which ought to be done. 2 Pomeroy, Eq. Jur. (5th ed.), p. 10, sec. 364; 19 Am. Jur., Equity, p. 315, sec. 456. We deem the following statement of the application made of such maxim in *Carpenter v. Providence Washington Ins. Co.* (1846), 45 U. S. (4 How.) 185, 223, 11 L. Ed. 931, 948, to be apropos to the instant case:

"The rule of equity is very broad to prevent a fraud, which would exist if one was permitted 'to derive a benefit from his own breach of duty and obligation.' 2 Story's Eq. Jur., sec. 781. And it has been laid down that 'if by fraud or misrepresentation one prevents acts from being done, equity

treats the case as if it were done.' 1 Ibid., sec. 439; 11 Ves. 638."

Counsel for Richard have cited *Estate of Nols* (1947), 251 Wis. 90, 28 N. W. (2d) 360. That case holds that the county court in probate matters has jurisdiction to determine adverse claims and the title to property in dispute, where the property is in the hands of the personal representative and the claim is asserted by an adversary, but not where the property is in the possession of the person claiming adversely to the estate. However, even in the latter situation, if such adversary has obtained his possession by invoking the jurisdiction of the county court, such court clearly has jurisdiction to compel him to account for the same in a situation such as present on this appeal.

Counsel also contends that there either is an estoppel by judgment, or *res adjudicata* applies, which bars the county court from exercising jurisdiction on the petition seeking an accounting of the $3,205.07. The judgment so relied upon is the writ of prohibition entered by this court with respect to the attempted assumption of jurisdiction by the county court to compel Richard to account in the estate of Harold Geb. However, the jurisdictional issue now being considered is different from that determined in such prohibition proceeding. Therefore, the principles of *res adjudicata* and estoppel by judgment have no application. We quote from the annotation entitled, *"Res judicata* effect of judgment dismissing action, or otherwise denying relief, for lack of jurisdiction or venue," 49 A. L. R. (2d) 1036, 1057, as follows:

"As a general proposition, a former judgment operates as estoppel only where the precise question involved in the subsequent action was determined in the former action. Consequently a judgment for defendant based on lack of jurisdiction is not conclusive in a subsequent proceeding as to a

jurisdictional question not identical with the one decided by the judgment."

We, therefore, conclude that the county court does have jurisdiction to consider and act upon the instant petition which seeks to compel Richard to account for so much of the $3,205.07 as is required to discharge Eleanor's lien awarded to her by the circuit court. The fact that the Harold Geb estate proceedings were void *ab initio* in itself would not authorize the county court to require Richard now to account further for such sum after he has already accounted for it to the heir to whom it was assigned by the final decree. As a condition precedent to the county court so ordering such an accounting, it will be necessary for it to find as a fact that Richard was guilty of fraudulent conduct that delayed Eleanor in securing her circuit court lien.

The jurisdiction thus far considered in this opinion is jurisdiction of subject matter. Richard has also objected to jurisdiction of the court over his person. Inasmuch as he was personally and timely served with the petition and order to show cause, there is no merit to such objection.

*By the Court.*—Order affirmed.